## John Robson

### *vs.*

## Jerome G. Swart.

Swart, a warehouseman, received into his warehouse a quantity of wheat from F. the owner thereof, upon an agreement "to safely store and keep the *said* wheat in his said warehouse, until a return *thereof* should be demanded by said F. or his assigns" Upon receipt of each load of the wheat, S. issued to F. a memorandum in this form:

"No. 711.          Account A. P. Foster, ·

41.25 Bushels                    No. 2 Wheat.

20 Sacks.

Dyer.                              J. G. SWART.

Minneiska, September 29, 1866."

The wheat was in fact of a quality inferior to No. 2. Swart kept it in the warehouse in a bin by itself. F. sold the wheat to parties who sold it to R. At each sale the "Memoranda" were transferred and delivered to the purchaser, with a written order from F. to S. directing S. to deliver the wheat to the bearer.

At the time of his purchase, R. had no knowledge of the amount and quality of the wheat, except what appeared in the "Memoranda". Upon tender of charges and demand of the wheat, S. tendered and offered to deliver to R. the identical wheat stored, but R. refused to receive it. *Held*, that S. was not estopped by the memoranda from showing that the wheat received was of a quality inferior to No. 2. *Held further*, that his tender and offer to deliver to R. the identical wheat stored, was a sufficient offer to perform his contract.

This action was commenced ·in the District Court for Winona County, and was tried before the court without a jury. The facts found, and the conclusions of law arrived

at by the court below, appear in the opinion of the Court. Judgment was entered for the defendant, and the plaintiff appeals to this Court.

MITCHELL & YALE for Appellant.

Swart is estopped from denying the truth of the admissions contained in his receipts as against Robson, who is an innocent purchaser, especially as these admissions or statements relate to matters which were or ought to have been within the knowledge of himself or agents.

An estoppel *in pais* will exist against a party when it appears:

*a.*   That he has made an admission inconsistent with the evidence offered.

*b.*   That the other party has acted on that admission.

*c.*   That the other party will be injured by allowing the truth of the admission to be disproved.

*Greenleaf on Ev., Vol.* 1, *Sec.* 207; *Phillips on Ev., Vol.* 1, *page* 453 *and Sec.* 9; *Griswold vs. Haven,* 25th *N. Y.,* 595; *Lickbarrow vs. Mason,* 1st *Smith's Leading Cases ; Plumb vs. Catt. Ins. Co.,* 18, *N. Y.,* 392; *Dezell vs. Odell,* 3 *Hill,* 215; *Welland Canal Co. vs. Hathaway,* 8 *Wend,* 483; *Pickard vs. Sears,* 6 *Ad. & Ell.,* 475; *Dyer vs. Cady,* 20 *Conn.,* 563; *Kinney vs. Farnsworth,* 17 *Conn.,* 360.

The doctrine of "*caveat emptor*" has no sort of application to a case of this kind. Nor does the doctrine of estoppel above referred to, in any way or manner depend upon the question of the negotiability of the instrument containing the admission. It is not claimed that either bills of lading or warehouse receipts are negotiable either at common law or by statute, in the proper sense of that term "negotiable."

Robson v. Swart.

At common law actual delivery of the property was necessary to consummate a sale. Yet when the article was bulky, or not present at the time and place of sale, or for any reason incapable of actual delivery, the law was satisfied with symbolical delivery. For example, the delivery of the key of a warehouse in which goods were stored, or a bill of lading of goods at sea; or if in possession of a warehouseman, a delivery of the receipt of the warehouseman was considered good delivery of the goods. And from the usages of commerce, the law has grown and hardened into its present form. Neither a bailee's receipt nor a bill of lading are *negotiable* but either are *transferable. Chitty on Contracts*, 390; *Chapman vs. Searles*, 3 *Pick.* 38; *Stanton vs. Eager*, 16 *Pick.*, 474.

Hence those cases arising under bills of lading, as to the rights of endorsees, rest on precisely the same grounds as those cases under any bailee's receipts. In neither case do they turn upon the negotiability of the instrument, but on the doctrine of estoppel, as above stated.

This doctrine has been applied by the courts in a great variety of cases, where business men place their blank signatures in the hands of parties who abuse their confidence. *Bank vs. Neale*, 22 *How.*, 111.

It was enforced against a corporation for the acts of its agent. *New Haven R. R. Co. vs. Schuyler*, 34 *N. Y.*, 30.

Also, in the case of false representations as to the amount of goods stored in a warehouse, made to a party by whom advances were made. *Griswold vs. Haven*, 25*th N. Y.*, 595.

Also in the case of bills of lading which had come into the hands of third parties. *Portland Bank vs. Stubbs*, 6*th Mass.*, 425; *Howard vs. Tucker*, 1*st B. & Ad.*, 712; *Dickerson vs. Seelye*, 12 *Barb.*, 99; *Ellis vs. Willard*, 5*th Seld.*,

534; *Byrne vs. Weeks*, 7th *Bosworth*, 372; *Strong vs. Grand
T. R. R. Co.*, 15th *Mich.*, 215; *Bradstreet vs. Heran*, 2
*Blatchford*, 118.

The New England cases, holding that receiptors for prop-
erty attached on mesne process are estopped as against the
sheriff or creditor from showing that no property was ever
delivered, illustrate the same doctrine. *Smith vs. Cad-
worth*, 24th *Pick.*, 196; *Dewey vs. Field*, 4th *Met.*, 381;
*Scott vs. Whitmore*, 27th *N. H.*, 309.

The cases which hold that a receipt is not conclusive, and
may be explained in all cases between the original parties,
or at least where no third party has been misled. *See cases
passim.*

Nor is it material that the admission as to quality of grain
was not made expressly in words to the appellant. It may
be implied from the open and general conduct of the party.
In the latter case the implied declaration may be considered
as made to every one in particular who may have occasion
to act upon it. As made in the receipts in question, it is
considered as made to every one who acts upon it in the
ordinary course of business. *Greenleaf on Ev.*, Vol. 1, *Sec.*
207; *Noyes vs. Ward*, 19 *Conn.*, 265.

The fact that the receipt was possibly somewhat informal,
can make no difference. No particular form is established
by law.

A "warehouse receipt" is one issued by a warehouse-
man.

A "receipt" is a written acknowledgment of the taking
or receiving any goods or money from another. *Whitney
vs. Tibbitts*, 17th *Wis.*, 360.

It may be contended that the appellant cannot maintain
this form of action; that he was bound to receive the "re-
jected wheat" and then sue for damages for the misrepresen-

Robson v. Swart.

tation contained in the receipt.  But it cannot be that a party is bound to receive any different article from that which the bailee is bound by law to deliver.  If required to accept "rejected" wheat, he would on the same principle be required to accept oats or rye.

The true principle is, that the warehouseman is estopped by his receipt to show as against a *bona fide* purchaser, that the property therein specified was not in fact delivered. The law conclusively presumes that it was delivered.  Hence an action is well brought as for conversion of the property, by refusal or failure to deliver when demanded by the *bona fide* holder of the receipt.  *Griswold vs. Haven*, 25 *N. Y.*, 595.

The true measure of damages is the market value of No. 2 wheat at the time of the demand, with interest from that date.  This would be $2.50 per bushel, with interest from the 14th day of May, 1867, for which amount judgment should be ordered for appellant, without remanding it for a new trial.  *Griswold vs. Haven*, 25 *N. Y.*, 595.

The counsel for respondent may cite as authority the case of *O. J. Hale et al. vs. The Milwaukee Dock Company*, 22 *Wis.*  But when carefully examined that case will be found to be strictly in accordance with our position.

The quantity and quality of the grain stored by Foster, were not only matters within the knowledge of respondent, but were facts which were, by the usages of trade, to be ascertained and determined by him, and if he either made a mistake or purposely misstated them, and a third party misled, the fault is his own and he is estopped from now contradicting them as against an innocent party.  *O. J. Hale vs. Mil. Dock Co.*, 22 *Wis.*

*But Lastly.*  We have thus far argued the case upon the doctrine of estoppel, which would of course only obtain

when the property had passed into the hands of an innocent third party, thereby practically admitting that had the suit been between the original parties, the respondent might relieve himself by tendering back the identical property.

But we submit that in a case of this kind the question of quality of the wheat was, even as between the original parties, a matter of written contract, which the respondent would not now be allowed to contradict, even as against Foster. *Osgood vs. McConnell*, 32 *Ill.*, 74.

BERRY & WATERMAN for Respondent.

I.—The deposit of grain with a warehouseman for safe keeping in store, until demanded by the depositor or his assigns, constitutes a simple bailment. *Bouvier's Law Dictionary*, "*Bailment*;" *Story on Bailments*, *C.* 1, *Sec.* 2 ; *Story on Contracts*, *Sec.* 682, *defining* "*bailment*;" *2d Kent Comm.*, 722. [560.]

A receipt of wheat "*in store*" imports a bailment. *Goodyear vs. Ogden & Pearl*, 4 *Hill*, 104 ; So "*on freight*." *Dawson vs. Kittle*, *id.* 107 ; So "*in store on freight*." *Ontwater vs. Nelson*, 20 *Barb.* 29 ; *Wadsworth vs. Olcott*, 2 *Seld.*, 64.

II.—At common law no assignment of the *contract of bailment*, in any of its forms, was available, to enable the assignee to maintain an action in his own name for the breach of any of its provisions ; and the code has made no change in this respect so as in any manner to interfere with the right of defense as against the assignee. 1 *Parsons on Contracts*, 5th ed., 223, 227 ; *Statutes of Minnesota*, 453, *Sec.* 27.

" A bill of lading is sometimes termed .*quasi* negotiable. An endorsement and delivery of it vests the *title* to the

goods while *in transitu*, in the endorsee; but the *instrument* is not negotiable and suit cannot be brought on it in the name of the endorsee." *Thompson vs. Downing*, 14 *Meerson & Welsby*, 403 ; 1 *Am. Leading Cases*, 327 ; 8 *Gray*, 281.

III.—But the delivery of warehouse receipts or bills of lading *in case of a sale or hypothecation of the property* is deemed effectual at law *as a delivery of the property itself*, and so far forth, evidence of the change of title and possession as to enable the holder to maintain an action in his own name, *because of his ownership of the property*. *Zwinger vs Samula*, 7 *Taunt.*, 265 ; *Rice vs. Outler*, 17 *Wis.*, 351 ; *Lucus vs. Douein*, 7 *Taunt.*, 279.

IV.—Warehouse receipts, in the ordinary and regular form, and *a fortiori*, mere tickets or memoranda of the crude and inexplicit character of those employed in the present instance, possess no quality of negotiability that will shield the purchaser of the property covered by them from the application of the maxim *caveat emptor*, or protect him from any equities against them in favor of the person executing them.

Assignees of warehouse receipts can take no greater right or interest than the assignor possessed, and are chargeable with the same notice and with all the equities that would apply to him. *Commercial Bank of Rochester vs. Colt*, 15 *Barb. S. C.*, 515.

The purchaser of a chose in action takes the interest purchased subject to all the defenses, legal and equitable, of the debtor who issued the security. *Bush vs. Lathrop*, 22 *N. Y.*, 538.

V.—But even though it were conceded as true that warehouse receipts possessed any such character of negotiability that the person issuing them is bound by their contents absolutely, and at all events in the hands of the assignee where

he would not be to the original holder, still so long as the property bailed remains intact, no such form of action is allowable, as was adopted in this case. In the supposed case the action should be a special one to recover damages for the fraud perpetrated by the warehouseman in falsely describing the property—the measure of damages in such case, of course, being the difference in value if as described and what it was in fact. *O. J. Hale vs. Mil. Dock Co.*, 22 *Wis.*

In short the answer to the question, in whom is the title to this wheat *now*, is the key to the proper determination of all the questions in controversy in this case. The plaintiff, in his complaint, says it is his. The judge finds such to be the fact. The defendant concedes it. But now the appellant appears to be insisting that the title has been changed to Swart. But what act of his did it? Certainly not the erroneous description, if any there were. That could never work any such result. Suppose the wheat had in fact been " No. 1," and was then described as " No. 2," can there be the slightest doubt that Robson, if owner, could demand and obtain the identical wheat? In that case would Mr. Robson concede that the defendant would fulfil his duty by keeping the good wheat and turning out the inferior quality, simply because No. 2 wheat was specified on the receipt? The question furnishes its own answer.

The truth is, the question is simply one of identity of the property in dispute, and not of quality, and when the former is determined, the latter is of necessity. The doctrine of estoppel so prominently urged by the appellant, has, therefore, no application to the case. Besides, they are not favored in the law.

VI.—Thus far this discussion has been on the supposition that the receipts in question were in the usual form of bills of lading or warehouse receipts, showing the property de-

Robson v. Swart.

posited " on account of the depositor or his order," or " on account of bearer " or " on account of whom it might concern," and also that the alleged custom of buying on the strength of them was established, neither of which is true in fact in this case.

*a.* The tickets on their face show the deposit was simply on " account of Foster."

*b.* The judge has not found any custom existing as alleged ; and, looking into the evidence, it is found contradictory on that point.    Some would buy on the strength of them, but most would not.    It is enough to say, the practice was not general, much less universal, at Minneiska, and hence there was no custom on which any legal right could be predicated.

Mr. Robson, therefore, must look to Foster or those from whom he purchased the wheat, for any damages he may have sustained by reason of their selling him an inferior quality of grain from what he bargained for ; but he has no legal or equitable demand against the innocent warehouseman.

*By the Court*—BERRY, J.—In this case the court below has found the following conclusions of fact and law, viz. :

" That during the time from the month of August, A. D. 1866, up to the month of July, A. D. 1867, the defendant, J. G. Swart, was a general warehouseman, engaged, among other things, in receiving grain in store for others for hire, doing business as such warehouseman, at Minneiska, in the State of Minnesota ; that during the months of September and October, A. D. 1866, one A. P. Foster was the owner of, and delivered to said defendant as such warehouseman, nine hundred and twenty-seven bushels of wheat in store, at the warehouse of said defendant, in Minneiska ; that said

defendant recived said wheat, and for a valuable considera-
tion agreed to be paid to him by said Foster, agreed to
safely store and keep the said wheat in his said warehouse,
until a return thereof should be demanded by said Foster
or his assigns; that said wheat was delivered to said de-
fendant in small quantities from farmers' wagons; that
upon receipt of each load of said wheat, said defendant
issued to said Foster a memoranda, partly printed and
partly written, all in the words and figures following, except
date, amount, and name of person delivering the same, and
number:

No. 711.
### Account A. P. Foster.
41.25 bushels.....................No. 2 wheat.
20 sacks.

DYER.                                    J. G. SWART.
Minneiska, Sept. 29, 1866.

That all of said wheat was placed in a bin and kept by
itself, and not mixed with other wheat; that by 'number
two wheat' was meant good, merchantable wheat, weighing
not less than fifty-four pounds to the bushel; that after-
wards said Foster sold said wheat to Messrs. Seavey and
Langley, and at the time of such sale, delivered to said
Seavey and Langley said memoranda or receipts; that after-
wards said Seavey and Langley sold said wheat to Messrs.
Kellogg and Mann, who afterwards sold the same to the
plaintiff herein, John Robson; that at each of such sales,
said 'memoranda' were transferred and delivered to the
purchaser, with a written order from said Foster to said de-
fendant, directing said defendant to deliver said amount of
wheat to the bearer; that at the time of such purchase by
the plaintiff, he had no other knowledge of the amount and
quality of wheat purchased, than what appeared upon said

memoranda; that afterward and on the 14th day of May, A. D. 1867, said plaintiff at Minneiska, aforesaid, tendered to said defendant said memoranda or receipts, and the defendant's charges for storing said wheat, and demanded a return of said wheat to the plaintiff; that thereupon the defendant tendered to, and offered to deliver to the plaintiff the identical wheat delivered to the defendant by said Foster, and for which said memoranda or receipts were given; that the plaintiff refused to receive said wheat; that the wheat so delivered to and stored with defendant by said Foster, was not ' number two wheat," but was wheat of an inferior grade; that at the time of such demand by the plaintiff, ' number two wheat' at Minneiska, was worth two dollars and fifty cents per bushel.

"As a conclusion of law, I find that the defendant has not converted said wheat to his own use; that the plaintiff is not entitled to recover from the defendant the value of said wheat, and that the defendant is entitled to judgment in his favor in this action, and for his costs and disbursements."

We have only to inquire whether the conclusion of law is correct. The memoranda taken alone do not express the terms of any contract. They are a part only of the transactions between the original parties, and their significance is only made apparent by the further facts found, showing the circumstances under which, and the purposes for which they were issued. The contract between Foster and the defendant is not then embodied in the memoranda, and it is not from a consideration of them alone that we are to determine the rights and obligations of the parties to this action.

The court below has found as a conclusion of fact, that Foster was the owner of, and delivered to the defendant, a

general warehouseman, 927 bushels of wheat in store, which was of a grade inferior to No. 2; that the defendant received the same and "agreed to safely store and keep the *said* wheat in his warehouse, until a return *thereof* should be demanded by said Foster or his assigns."

The contract then was to keep and return to Foster or his assigns the identical wheat left in store. Even if the memoranda were formal warehouse receipts, fully expressing the terms upon which the wheat was delivered to and accepted by the defendant, they would not estop the defendant, as against Foster, from showing that the wheat received was really of a grade inferior to number two, nor would they bind the defendant to return any other or better wheat than that which he had received. As between the original parties to a bill of lading the rule is the same; and it proceeds upon the ground that the description of the quantity or quality of the goods received is part of a *receipt*, and therefore open to explanation. It is not regarded as part of a *contract*, unless perhaps upon express stipulation that it shall be so regarded. 1 *Gr. Ev.* (*12th Ed.*) § 305 *and notes; Angell on Carriers*, (*4th Ed.*) § 231 *and notes; Sears vs. Wingate*, 3 *Allen*, 103; *Ellis vs. Willard*, 5 *Selden*, 529; *Meyer vs. Peck*, 28 *N. Y.*, 596; *Blanchard vs. Page*, 8 *Gray*, 287.

The same rule must apply to these memoranda, for they are certainly nothing *more* than receipts. As against Foster, then, the defendant having kept the wheat which Foster had stored with him by itself, so that he was able to return it *in specie*, and having tendered, and offered to deliver the same when it was demanded, is in no default. He has been guilty of no conversion of the wheat, nor of any other act or omission by which he would have made himself liable to Foster, had Foster retained his ownership of the wheat. If

Foster had not sold the wheat, the defendant, upon making the same tender and offer to him, would be held to have done that, which, so far as an action like the present is concerned, is equivalent to the full performance of his contract obligations. This brings us to the other question in the case. Foster sold the wheat to Seavey and Langley, they to Kellogg and Mann, and Kellogg and Mann to the plaintiff. At each of these sales the memoranda were transferred and delivered to the purchaser, with a written order from Foster, directing the defendant to deliver said amount of wheat to the bearer. At the time of his purchase, the plaintiff had no knowledge of the amount or quality of the wheat, except what appeared upon the memoranda.

If the plaintiff only acquired the rights which Foster had, then it is obvious that the defendant, under the facts found, is no more liable to the plaintiff in this action, than he would have been to Foster in a similar action, if Foster had remained owner of the wheat. It does not appear that there was any communication between the plaintiff and defendant prior to, or at the time when the plaintiff purchased the wheat, and received the memoranda and accompanying order : so that if he acquired any rights against the defendant greater, or other than Foster had, it was solely by virtue of the memoranda, solely because the defendant, having issued these memoranda, is, as against the plaintiff, estopped by the terms thereof to deny that the wheat which he received, and which he was bound to deliver was No. 2. This is the principal ground upon which the plaintiff relies to maintain this action. To constitute an estoppel *in pais*, there must, among other things, be some admission, by word or act, upon the truth of which, the party who seeks to set up the estoppel has the right to rely. 2 *Gr. Ev.* (12*th Ed.*), sec. 207 ; *Hunter vs. Trustees Sandy Hill*, 4 *Hill*, 411.

But in this case, as we have already seen, the "memoranda" do not contain, nor profess to contain the terms of the contract between the defendant and Foster. They contain no representation that the defendant had agreed to deliver to Foster or his assigns No. 2 wheat; and as they neither contain nor purport to contain any such representation, they contain nothing upon which the plaintiff had the right to rely for the purpose of estopping the defendant from showing what the real agreement in this respect was. To ascertain what the agreement was, it was necessary for the plaintiff to go outside of the memoranda, and to inquire for the other facts which appear in the finding of the Court; and this necessity was patent upon the face of the memoranda themselves; so that, so far from containing a conclusive admission that the defendant was bound to deliver No. 2 wheat, they left the plaintiff to inquire for what purpose they were issued, and what obligations the defendant had assumed in reference to them. They are not analogous to bills of lading, or to regular and formal warehouse receipts, but so far as the point under consideration is concerned, they may more properly be likened to bills of parcels. Of these it is remarked by Mr. Justice Bigelow in *Hazard vs. Loring*, 10 *Cushing*, 268, that they are "informal documents * * not used or designed to embody, or set out the terms and conditions of a contract of bargain and sale. They are in the nature of receipts, and are always open to evidence which proves the real terms upon which the agreement of sale was made between the parties." See also, 1 *Gr. Ev.*, (12th *Ed.*) *Sec.* 305 *and notes.* In our opinion, then, the defendant is not estopped by the memoranda from showing what was the grade of the wheat delivered to him, or from showing that he is entitled to discharge his contract by returning the same wheat which he received. The

plaintiff by his purchase of the wheat, and by receiving the memoranda and order, under the circumstances appearing in this case, acquired, as against the defendant, the rights of Foster only. The conclusion of law arrived at by the court below, was therefore correct, and the judgment entered thereupon is accordingly affirmed.