## CATHCART v. SNOW & HUBER.

1. **Warehouseman**: RECEIPTS OF: WEIGHMASTER'S TICKETS ARE NOT: ASSIGNMENT OF TICKETS FOR WHEAT: SALE OF WHEAT BY WARE-HOUSEMAN FOR OWNER'S DEBT: RECOVERY BY ASSIGNEE OF TICKETS. H. delivered certain loads of wheat to defendants, warehousemen, for which he took weighmaster's tickets with the word "stored" written upon their face. After the wheat had all been thus delivered, H. was requested by defendants to bring in his scale tickets and get a ware-house receipt therefor, which he neglected to do. H. afterwards sold and delivered the tickets to plaintiff, but defendants, without the knowledge or consent of H., had sold the wheat, and applied the pro-ceeds thereof upon a debt which H. owed them. In an action by plaint-iff upon the tickets, *held*, (1) that they were not warehouse receipts, in contemplation of the statute. (Code, § 2171). (2) That, as H. had no wheat in defendant's hands at the time of the sale and delivery of the tickets to plaintiff,—his right to wheat having been changed into a money demand—plaintiff could not recover upon the tickets.

*Appeal from Marion District Court.*

THURSDAY, OCTOBER 23.

THIS action is brought by the plaintiff, as the assignee of one Henry of certain alleged wheat receipts. The defend-ants are the owners of a warehouse, used for the storage of grain. In September, 1874, they received from Henry a certain quantity of No. 2 wheat, and afterwards delivered a portion, but the balance they shipped out and sold, without Henry's knowledge or consent. Their excuse for doing so was that Henry was indebted to them for a still larger

amount, and that they were willing to give him the full value of his wheat by crediting him the amount thereof in their account with him. The case was referred to a referee, who found the fact of the indebtedness of Henry to the defendants, as alleged, and reported that judgment should be rendered in their favor for costs. The court, however, refused to confirm the report, and rendered judgment for the plaintiff for the amount of his claim. The defendants appeal.

*Bosquet & Earle*, for appellants.

*Stone & Ayres*, for appellee.

ADAMS, J.—The question argued in this case, and upon which the court below found for the defendants, is as to the defendants' right to set up Henry's indebtedness to them by way of counter-claim against the plaintiff.

Before proceeding to the consideration of the question upon its merits, it is proper that we should observe that the counter-claim was filed after the case was referred. Section 2827 of the Code provides "that the order (of reference) shall not be made until the case is at issue as to the parties whose rights are to be examined on the reference." The plaintiff objected to the filing of the counter-claim after the case had been referred, and he made the order of the referee allowing the counter-claim to be filed a ground of exception to the report.

The court below, however, in refusing to confirm the report, does not appear to have sustained the exception, or acted upon the theory that the counter-claim was improperly filed. On the other hand, it proceeded to render judgment for the plaintiff upon the facts found by the referee, which included the facts averred in the counter-claim. The appellee, in argument, makes no reference to the time and mode of filing the counter-claim. On the other hand, in stating the questions presented, he excludes any mere question of practice. In view, therefore, of the mode in which the

appellee has seen fit to present the case, we feel justified in assuming that we are not called upon to determine any question of practice.

Coming, then, to the questions argued, we have to say that the appellee is the holder, by assignment from Henry, of certain papers, which he insists are warehouse receipts. He further insists that, if they are not such, he is, nevertheless, the owner of wheat in the defendants' hands, to the amount specified in the alleged receipts; and that, in either case, the defendants cannot be allowed to set up Henry's indebtedness to them by way of counter-claim.

We will consider the last question first. It may, for the purpose of the opinion, be conceded that, if Henry was the owner of certain wheat in the defendants' hands, and he sold the same to the plaintiff, it would be the plaintiff's right to demand and receive the wheat from the defendants, regardless of any indebtedness due from Henry to them. But the finding of the referee shows that Henry was not the owner of such wheat at the time of his pretended sale to the plaintiff. The pretended sale took place in February, 1876. The referee found that "the wheat delivered by Henry to defendants was shipped and sold by them in the usual course of business, on their own account, and the proceeds thereof appropriated to their own use, within about one month after the same was delivered to them," which was in 1874. We do not understand by this merely that the defendants shipped from a common mass, in which Henry's wheat had been mixed, until the identical kernels were gone, but leaving enough of the common mass to satisfy Henry's claim without infringing the rights of any other depositor, but that the shipments were of such a character that Henry's claim had become changed from a claim to wheat to a claim for damages for breach of the contract of bailment. If Henry had remained part owner of a common mass, to the amount of the number of bushels due him, under the doctrine of *Sexton & Abbott v. Graham*, 53 Iowa, 181, it would have been

entirely immaterial whether the identical kernels deposited remained or not. The finding, then, must be construed as meaning that Henry's interest had become divested by the shipment and sale, and that nothing remained upon which his interest attached.

If, then, the plaintiff is entitled to recover regardless of the indebtedness due the defendants from Henry, his right of recovery must rest upon the alleged receipts. If the so-called receipts are warehouse receipts, within the meaning of the statute, it may be that the defendants could not set up the fact that the wheat called for had been shipped out and sold. For the purpose of the opinion this will be conceded. But we are not able to conclude that what are called warehouse receipts are such in fact. They purport to be nothing more than weighmaster's tickets, or what are called scale tickets, with the word "stored" written upon the face thereof. With the exception of the word "stored," they are in the usual form of such tickets. Below we give a copy of one of them, which is sufficient to show what their form is:

"WEIGHED ON THE FAIRBANKS SCALES.

SEPTEMBER 21, 1874.

Load of wheat
   From J. A. Henry,
        Gross  -  -  4700 lbs.
   Stored.  Tare  -  -  3280 lbs.
              —————
        Net  -  -  1420 lbs.
        Net - - - - - - 27 bus."
"L., Weighmaster."

We may also say that the referee found that the tickets were given by the defendants to Henry. But they seem to have been regarded simply as memoranda of the weight and quantity delivered and stored. They are not in the form of a contract, and do not show the number or grade of wheat, nor the terms or conditions of storage. The referee found

"that it was the custom of defendants to give these scale tickets to parties delivering grain until they were through delivering, when the tickets would be taken up and a warehouse receipt given in the following form:

" Received of ———, —— bushels No. — wheat, to be stored at the rate of $\frac{1}{2}$ cent per bushel per month from date until sold. Grain to be held at owner's risk by fire or the elements.

"Date ———
["Signed,]                                    SNOW & HUBER."

He also found "that after the last load of wheat was delivered at the defendants' elevator by Henry, he was requested by the defendants to bring in the scale tickets and get a warehouse receipt therefor, but he neglected to do so."

Such being the findings, it appears to us there is nothing in the language of the scale tickets, or in the circumstances under which, or in the intent with which, they were given, that would justify us in regarding them as warehouse receipts. *Robson v. Swart*, 14 Minn., 371. The statute in regard to the issuance of warehouse receipts, and the duties and liabilities of those issuing them, is very strict. They are not only designed to circulate as evidence of title to grain, but severe penalties are imposed upon warehousemen for the improper disposition of grain covered by receipts issued. They should properly, we think, be signed by the persons issuing them, and show the number or grade of the grain, in order that the property called for may be identified. Any paper which, in a criminal action against a warehouseman, could not properly be denominated a warehouse receipt, could not, we think, in a case like the present. To hold that a given paper may be regarded as a warehouse receipt for one purpose, but not another, would only introduce confusion and uncertainty.

We reach the conclusion that the papers in question are not warehouse receipts, and that the report of the referee

should have been confirmed, and judgment rendered thereon for the defendants for costs.

REVERSED.