[No. 19518.    Department One.—February 27, 1896.]

B. SINSHEIMER ET AL., RESPONDENTS, *v.* THOMAS
WHITELY ET AL., APPELLANTS.

WAREHOUSE RECEIPT — WEIGHING TAGS — PLEDGE OF STORED GOODS.—
INSUFFICIENT DELIVERY—ATTACHMENT.—In order to constitute a ware-
house receipt, a transfer of which will pass title and constructive pos-
session of goods stored thereunder, there must be something on the face
of the instrument to indicate that a contract of storage has been en-
tered into; and mere weighing tags given by a company that makes no
charge for storage, which only show the weight and number of sacks of
beans weighed on the company's scales, for the person named therein,
are not warehouse receipts, and the transfer of such weighing tags to a
pledgee thereof does not transfer possession of the beans, and they may
be attached by a creditor of the pledgor.

ID.—WAREHOUSEMEN—POWER TO ISSUE WAREHOUSE RECEIPTS.—It is only
persons who pursue the calling of warehousemen, by receiving and
storing goods in a warehouse as a business for profit, that have power
to issue a technical warehouse receipt, the transfer of which is a good
delivery of the goods represented by it.

ID.—LEVY OF ATTACHMENT—POSSESSION BY KEEPER—PAROL EVIDENCE TO
AID RETURN.—Goods stored in a warehouse are sufficiently levied upon
under a writ of attachment by taking actual possession of them and
placing them in charge of a keeper, and the return of the officer may be
aided by parol evidence showing that he remained in possession of the
goods by his keeper.

APPEAL from a judgment of the Superior Court of
San Luis Obispo County and from an order denying a
new trial.   V. A. GREGG, Judge.

The facts are stated in the opinion.

*F. A. Dorn,* and *William Shipsey,* for Appellants.

*J. M. Wilcoxon,* and *Wilcoxon & Bouldin,* for Respond-
ents.

BRITT, C.—Replevin for two hundred and seventeen
sacks of beans.   Defendant Whitely is constable of a
certain township in San Luis Obispo county, and as
such levied on the beans as the property of one Costa
in virtue of a writ of attachment to him issued out of
the justice's court of said township at the suit of one
Lial against said Costa.   At the time of the levy the

beans were stored in a warehouse at Pismo, in said county, owned by the Jordan Bituminous Rock and Paving Company, a corporation, which is joined with the constable as a defendant in this action. In November, 1893, said Costa, who was then the owner of the beans, caused them to be weighed at said warehouse and deposited therein, receiving from said paving company at that time five certain instruments, which plaintiffs style "warehouse receipts," and which defendants call " weighing tags"; these were in the following form, varying as to the number of sacks specified: "Jordan Bit. Rock and Pav. Co.'s scales, Pismo, Cal., 11–2, 1893. Weighed for F. J. Silva. Gross, 5,080.    Tare, 1,570.    40 sks. beans.    Net wt. 3,510.    Marked F. J. S.    A. Klatt, weigher." They were issued at Costa's request in the name of one F. J. Silva, with consent of the latter, but were delivered to Costa; Silva never had possession of them and had no interest in the beans.    A Mr. Stevens, agent of said company, and who had charge of the warehouse, testified at the trial: " The tags in evidence were issued by our company at Pismo, and are the only kind issued by our company, the only receipts given. They are given by the weigher; the tags, or whatever you call them, were given by the weigher at the scales when the beans were weighed and were placed in the warehouse"; also, that the company took the beans as a warehouseman, but had no charge against them; that it does not charge storage.

On December 6, 1893, Costa delivered said instruments, though without indorsement, to plaintiffs as security for a debt then owed by him to them.    He also gave them a written order for the beans addressed to "Agent Pismo Wharf and Warehouse."    December 11th, following, the constable seized the beans pursuant to said writ in Lial's suit against Costa; Lial obtained judgment in that action and an execution issued thereon, under which the constable was about to sell the beans when plaintiffs for the first time notified him and also the paving company of their claim to the property in

virtue of the transfer to them of said alleged warehouse receipts; their demand for release of the property being refused, they brought this action.

A warehouse receipt has been defined to be a written contract between the owner of the goods and the warehouseman, the latter to store the goods and the former to pay for that service. (*Hale* v. *Milwaukee Dock Co.*, 29 Wis. 488; 9 Am. Rep. 603.) Perhaps some of the terms of this contract may be implied (see forms of such receipts construed in *Lowrie* v. *Salz*, 75 Cal. 349, and *Bishop* v. *Fulkerth*, 68 Cal. 607); but surely there ought to be something on the face of the instrument to indicate that a contract of storage has been entered into; our statute on the subject requires that much (Stats. 1877–78, p. 949, sec. 5); the language in the papers here, "Weighed for F. J. Silva forty sacks beans," no more signifies that the paving company received or held the beans as a warehouseman than that it bought or sold the same, or shipped them to a distant port; on their face they plainly are not warehouse receipts. (*Cathcart* v. *Snow*, 64 Iowa, 584; *Robson* v. *Swart*, 14 Minn. 371; 100 Am. Dec. 238.) But it is said that the tickets were the only vouchers issued by the defendant company, and hence must be treated as warehouse receipts. Rather, it seems to us, that circumstance tends to show that said company was not a warehouseman at all in the sense which the law attributes to that term—an inference corroborated by the fact that it makes no charge for storage. It is only persons who pursue the calling of warehousemen—that is, receive and store goods in a warehouse as a business for profit —that have power to issue a technical warehouse receipt, the transfer of which is a good delivery of the goods represented by it. (*Shepardson* v. *Cary*, 29 Wis. 42; *Bucher* v. *Commonwealth*, 103 Pa. St. 534; Edwards on Bailments, sec. 332.) Since there was nothing equivalent to delivery of the beans in the transaction between Costa and plaintiffs, the rights of the attaching officer are not affected by the attempted transfer.

The court found that the constable made no valid levy of the writ; and some effort is made here to justify the finding; it seems to us a mere conclusion of law; but, admitting it to be a finding of ultimate fact, it is not sustained by the evidence. It appears from the constable's return and certain parol evidence (which was admissible in aid of the return, *Brusie* v. *Gates*, 80 Cal. 462), that he took actual possession of the beans in the warehouse and placed said Stevens in charge thereof as keeper; there were some further proceedings by him to charge both Silva and the paving company as garnishees, but the sufficiency of these need not be looked to; his possession by his keeper was a compliance with the statute. (Code Civ. Proc., sec. 542, subd. 3.)

The judgment and order denying defendants' motion for new trial should be reversed.

BELCHER, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying defendants' motion for a new trial are reversed.

HARRISON, J., GAROUTTE, J., VAN FLEET, J.

Hearing in Bank denied.