L. C. JONES TRUCKING CO., INC., a corporation,
*Plaintiff and Respondent,*

vs.

THE SUPERIOR OIL COMPANY, a corporation,
*Defendant and Appellant.*

(No. 2487; July 24, 1951; 234 Pac. (2) 802)

386

388

For the defendant and appellant the cause was submitted upon the brief of S. J. Lewis of Casper, Wyoming, and P. W. Spaulding of Evanston, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of Edward E. Murane of Casper, Wyoming.

394

## OPINION

BLUME, Justice.

In this case L. C. Jones Trucking Company, Inc., a corporation, brought an action on March 8, 1949 against Jo E. Fletcher and John B. Shaw, doing business as Fletcher and Shaw, defendants, to recover judgment of $5667.45 on a note dated February 11, 1949 executed by "Fletcher & Shaw, Jo E. Fletcher." That will hereafter be referred to as the "main case." The Superior Oil Company was served with garnishment process and it answered on April 1, 1949 that it owed the defendants the sum of $7868.00. Thereafter

on May 6, 1949 judgment was entered in this action against both Fletcher and Shaw for the sum of $5836.90 and the Superior Oil Company was directed to pay money into court to satisfy this judgment. The garnishee failed to do so. Thereafter and on September 3, 1949 a petition was filed in the present case by the plaintiff above mentioned against the Superior Oil Company to compel it to satisfy the judgment against Fletcher and Shaw as above named. The defendant answered admitting that it received the notice of garnishment; it alleged that the affidavit for attachment was insufficient for the issuance of a writ and order of attachment; that no service of summons upon the defendants was had in said action and that the District Court was without jurisdiction to render judgment against Fletcher and Shaw or either of them; that the notice to the garnishee was not signed by the sheriff and that no right or claim to any debt of this defendant to said Jo E. Fletcher and John B. Shaw was acquired by the notice of garnishment and the court was without jurisdiction over any debt then owed by the Superior Oil Company to the defendants in that action; that the present defendant, Superior Oil Company, relying upon the apparent regularity and sufficiency of the pretended garnishment, filed its answer to the garnishment, but that upon investigation it first discovered the irregularities therein; and that by reason thereof, the court was and is without jurisdiction to enter any judgment against it as garnishee; that it inadvertently after its answer was filed paid to Fletcher and Shaw, as partners, all of the sums of money due or owing them by the defendant, Superior Oil Company; that: "Immediately upon receipt of said certified copy of said Judgment and Order the plaintiff, thru its attorney of record herein, and said Jo E. Fletcher were notified of said payment and the circumstances surrounding the same. Said Jo E. Fletcher, in behalf of himself and said part-

nership, promised this defendant (Superior Oil Company) to immediately satisfy said Judgment in said action, * * *, but he, either individually or as a member of said partnership, has wholly failed and neglected to discharge said Judgment. Thereafter said Jo E. Fletcher and John B. Shaw, individually, and as co-partners, filed their voluntary Petitions in Bankruptcy in the United States District Court for the District of Wyoming, and thereafter and on or about September 8th, 1949, they individually, and as co-partners, were duly adjudicated bankrupt and a Trustee in Bankruptcy has been duly appointed in said proceedings." The trial court rendered judgment in favor of the plaintiff and against the Superior Oil Company, a corporation, defendant, in the present action, directing it to satisfy the judgment theretofore rendered against Fletcher and Shaw. The Superior Oil Company has appealed and will herein be referred to as appellant.

## 1. SUIT AGAINST PARTNERS.

The validity of the judgment against the garnishee depends upon the validity of the judgment in the main action—that is on the validity of the judgment against parties, whose indebtedness had been garnisheed. 38 C. J. S. 343; 5 Am. Juris. 41, Section 711. Hence, we shall first investigate the proceedings and judgment relating to Fletcher and Shaw. "At common law a partnership is not a legal entity but only a contractual status, and hence, except as modified by statute or rule of practice, suits in behalf of a partnership must be brought in the individual names of the members of the partnership, and not in the firm name, although by statute in many jurisdictions a partnership is permitted to sue in the name which it has assumed or under which it does business." 40 Am. Juris. 430, Section 432; 68 C. J. S. 609; Note, 29 L. R. A. N.S. 282. Section 3-619, Wyo. Comp. St. 1945 provides: "A partner-

ship formed for the purpose of carrying on trade or business in this state, or holding property therein, may sue or be sued by the usual or ordinary name which it has assumed, or by which it is known; and in such case it shall not be necessary to allege or prove the names of the individual members thereof." According to Section 3-1009, Wyo. Comp. St. 1945, it is provided that service of process may be had as follows: "If the defendant is a partnership, *sued by its company name,* by leaving a copy of the summons and petition at its usual place of doing business." (Italics supplied). It may be noted that the service mentioned upon a partnership may be made in the manner specified by statute only when the partnership is "sued by its company name." In many of the other states statutes provide that service may be made by serving one of the partners. That provision is not in our statutes but we have no doubt that where the partnership does not have a usual place of doing business in this state, it may, nevertheless, be sued by serving each and all of the members of the partnership in order that it may be held liable as a partnership. Herron vs. Cole Bros., 25 Neb. 692, 41 N. W. 765. If the partnership is sued as an entity as above mentioned, a judgment in such action reaches the joint property of the partnership. Hamner vs. B. K. Block and Co., 16 Utah 436, 52 P. 770, Peterson vs. W. Davis and Sons, 216 Minn. 60, 11 N. W. 2d 800. See also 40 Am. Juris., Sections 434 and 435. Thus it is seen that the statute provides a comparatively easy method by which a plaintiff who has a claim against a partnership may reach it and its property. Moreover, in addition to that, such plaintiff may in such action reach the members of the partnership according to the following provisions in Section 3-3905 providing: "The members of a partnership, against which a judgment has been rendered by its firm name, may be made parties to the judgment by action."

The plaintiff herein did not choose to follow the statutory method provided by our statute and chose to pursue the procedure under the common law, or one similar to it. It is contended by the appellant herein that the action brought by the plaintiff against Fletcher and Shaw was an action against the individuals only, citing Good vs. Red River Valley Co., 12 N. Mex. 245, 78 P. 46. That contention, we think, is correct. The action was brought, as heretofore stated, against Jo E. Fletcher and John B. Shaw, doing business as Fletcher and Shaw. The petition alleged that "the defendants made, executed and delivered to plaintiff their promissory note in writing." Then the note is set up. The petition further proceeds: "That no part of said promissory note has been paid, * * * and that there is now due and owing to the plaintiff from the defendants and each of them * * * the principal sum of $5623.35 * * *. WHEREFORE, plaintiff prays judgment against the defendants and each of them for the sum of $5667.45 * * *." Summons was issued which had the caption contained in the petition and was directed to the sheriff for him to notify "Jo E. Fletcher and John B. Shaw," to answer the petition in the case. The foregoing shows, we think, that the petition was one against individuals and not against a partnership as an entity. It is stated in 68 C. J. S. 683: "An action against certain named individuals as partners doing business under a certain firm name is an action against them as individuals, and is not an action against the partnership as a separate entity." Statement to the same effect is found in 47 C. J. 955 and a number of cases are cited. The subject is discussed at length in the case of Maclay Co. vs. Meads, 14 Cal. App. 363, 112 P. 195, 198. In State ex rel. vs. Gray, 92 Fla. 1123, 111 So. 242, the court, citing numerous cases, states that the authorities are practically unanimous that an action against named defendants is against them as individuals and not as

copartners. In view of this rule the court in the case of Steele vs. Wardwell, 57 Cal. App. 2d 642, 135 P. 2d 628, 633 drew the conclusion that in such case the liability of the individual sued is an individual liability regardless of whether or not it arises from partnership relation. On the face of things, that is undoubtedly correct. Nevertheless, according to the weight of authority the facts may be shown. Thus it is stated in 40 Am. Juris. 438: "In a few jurisdictions it has been held that the fact of partnership should be alleged in the complaint in an action against the persons composing a partnership. In most jurisdictions, however, the general rule is that in bringing suit against a firm it is sufficient to designate the names of the parties, and it is unnecessary to allege the existence of a partnership. And if suit is brought against individuals who in fact are partners trading under the name of a certain company, it is not necessary to allege that they were partners, in order to admit evidence of their joint liability as the legal result of their association as partners, or evidence of their making a contract under the name of such company." The subject is annotated in Annotated Cases 1912A, 512-513, and is considered at length in the case of First Nat. Bank of Deadwood vs. Hattenbach, 13 S. D. 365, 83 N. W. 421 where the court said in part: "The action is against individuals, and not against the co-partnership. Shoe Co. vs. Stebbins, 3 S. D. 540, 54 N. W. 593. It has in some cases been held necessary to allege the co-partnership, for the purpose of letting in proof that one member of the firm was authorized to sign the firm name, but the weight of authority is in favor of the rule that proof of the partnership is admissible as evidence to show a joint liability where no partnership is alleged. 15 Enc. Pl. & Prac. 920, 921; Jemison vs. Dearing's Ex'rs, 41 Ala. 291; Swinney vs. Burnside, 17 Ark. 38; Pollock vs. Glazier, 20 Ind. 262; Howard vs. Woodward, 52 Kan. 106, 34 Pac. 348; Stix

vs. Mathews, 63 Mo. 371; Singleton vs. Thornton (Sup.) 9 N. Y. St. Rep. 600; Hawley vs. Hurd, 56 Vt. 617; Fetz vs. Clark, 7 Minn. 217 (Gil. 159). In 15 Enc. Pl. & Prac., supra, the rule is thus stated: 'As a general rule, in an action against partners upon a partnership obligation it is not necessary to allege the partnership between the defendants, but they may be declared against as any other joint debtors; and under an allegation that defendants contracted, without any averment of partnership between them, proof of a partnership is admissible as evidence to show a joint liability. Indeed, in such a case, if the partnership is averred in the complaint and denied in the answer, the issue formed is immaterial.' In Hawley vs. Hurd, supra, the supreme court of Vermont, speaking upon this subject, says: 'The note for $800 was admissible under the general counts. There is nothing peculiar relating to the form of declaring against partners, except that care must be taken that all the causes of action be stated to be joint. 2 Saund. Pl. & Ev. 708. They may, as a general rule, be declared against as you declare against other joint contractors." The substance of the holding in a number of other cases is found in the case.

In the case at bar the testimony is conclusive to the effect that Jo E. Fletcher and John B. Shaw were co-partners, doing business as Fletcher and Shaw. Jo E. Fletcher, according to the allegations of the garnishee in this case, promised to pay the judgment that was rendered in the main action herein, thus recognizing the debt as a partnership debt. The note purports to be executed on behalf of the firm by Jo E. Fletcher. Hence, the court in this case must have found in order to warrant a judgment against John B. Shaw, that the indebtedness was an indebtedness of the partnership of Fletcher and Shaw. At least in this action which is a collateral attack on the judgment herein, that must be

accepted as true. Nor is anything to the contrary claimed herein. So we must proceed to consider the process in the main action and the judgment rendered therein.

## 2. PROCESS AND JUDGMENT IN MAIN CASE.

The judgment against Jo E. Fletcher and John B. Shaw in favor of the plaintiff recited: "the Court having before it the records and files in this case, and the plaintiff having presented his evidence and produced the promissory note sued upon in his petition, and having heard the testimony of plaintiff, and the record showing that service had been made upon one of the partners, John B. Shaw of the partnership firm doing business as Fletcher and Shaw, and that said defendants failed to answer the petition of the plaintiff, and the Court being fully advised in the premises DOTH FIND: That plaintiff secured proper service upon the defendants and that defendants failed to answer the petition of the plaintiff on or before the 30th day of April, 1949, and have been and now are in default." Judgment accordingly was entered in favor of the plaintiff against the defendants, and each of them, and the Superior Oil Company was directed to pay into court a sufficient amount to satisfy the judgment. Counsel for the plaintiff herein contends that in view of the recitals of the judgment, it is not subject to an attack herein, which is a collateral attack upon the judgment. We think counsel goes too far in his contention. It is stated in 31 Am. Juris. 201 that: "In most jurisdictions, the rule is that a recital in a judgment of the presence of a jurisdictional fact may be impeached in a collateral proceeding by a positive contrary showing of the remainder of the record upon which the judgment is based." In 31 Am. Juris. 203 it is stated: "According to the weight of authority, a recital in a judgment of due service of process may be impeached or contra-

dicted upon collateral attack by an officer's return appearing in the record." See also Mahan vs. Wyopa Co., 27 Wyo. 17, 189 P. 633. And there can be no doubt that since the garnishee would be adversely affected, it can raise the point. 31 Am. Juris. 179, Section 581. The summons in this case was directed as hereinbefore mentioned, to Jo E. Fletcher and John B. Shaw as individuals. The return of the summons shows that it was served "by delivering to _____ at his usual place of residence leaving with Mrs. John B. Shaw, a party over the age of 16, a copy of the same, together with copy of petition." Counsel apparently, without authority of the court, had the officer amend the return six months later by adding "being also the usual place of doing business of Fletcher and Shaw in Natrona County, Wyo." This addition to the return, even though lawfully made, was (together with all testimony relating thereto) wholly immaterial, in view of the fact, as hereinbefore mentioned, that this was not an action against the partnership as an entity but an action against two individuals. It is elementary that a party to be affected by a personal judgment must have a day in court or an opportunity to be heard. 31 Am. Juris. 74; Dillard vs. McKnight, 34 Cal. 2d 209, 209 P. 2d 387. There can be no pretense that the return of the summons in the case shows that there was any service of any kind whatever on Jo E. Fletcher, one of the individuals sued in this action, even though the judgment recites generally that the defendants were served. The judgment itself shows that there was service only on John B. Shaw. Thus the general recital above mentioned, and any presumption of regularity, is contradicted not only by the return on the summons but also by the judgment itself. Hence, the judgment against Jo E. Fletcher as an individual was totally void. 1 Freeman on Judgments (5th Ed.), Section 108; 1 Black on Judgments (2d Ed.) Section 233. It is said in 31 Am.

Juris. 73-74: "Although there are statutes authorizing judgments against two or more joint debtors upon service of summons on but one of them, the general rule is that it is improper to render judgment against all the obligors where the court has not acquired jurisdiction over some of them. A judgment so rendered is void as against the parties over whom the court has no jurisdiction."

The situation is somewhat different in connection with the service on John B. Shaw, although not beyond doubt or controversy. It is contended that there was not even any service upon him. We are cited, for instance, to Scott vs. Ray (Tex. Civ. App.), 141 S. W. 1002; Bugbee vs. Thompson, 41 N. H. 183; Chamblee vs. Huffsmith (Tex. Civ. App.), 44 S. W. 616; Kellam vs. Trail (Tex. Civ. App.) 185 S. W. 988. None of these cases are in point, for the reason that in these cases the attack on the judgment was direct, while in the case at bar the attack is collateral. The rule applicable in this case is that stated in 49 C. J. S. 829 where it is stated: "A defect in the form or matter of the summons or other process not absolutely destructive of its validity, or an irregularity or defect in the service of the process on defendant which, although material and available on a direct attack, is sufficient to give notice of the proceedings, does not deprive the court of jurisdiction and therefore does not expose the judgment to collateral impeachment, particularly where the defect or irregularity is amendable, and is cured by a failure to object thereto in time. Where, however, the defect in the process is so radical that it amounts to no process at all, as where it wholly fails to give the party the information it is expected to convey, or where the attempted service is so faulty that it does not constitute a legal service on defendant or amounts to no service at all, there is a want of jurisdiction and the judgment will

be impeachable collaterally." So the question here is whether the defect in the service on John B. Shaw is so radical that we must say he had no notice at all.

It does not appear directly on the return of the summons that service was made on John B. Shaw. On direct attack, the service would probably have been quashed, unless amended, as might have been done. 42 Am. Juris. 114, Note 8. But it does appear that a copy of the summons and a copy of the petition was left with Mrs. John B. Shaw at "his usual place of residence." That is such service, if made on a member of the family of defendant, as is permitted to be made on a party to an action, according to Section 3-1009 of the Wyo. Comp. St. 1945. The crude return of the sheriff may be simplified as follows: "I received the within summons * * * and served the same * * * by leaving with Mrs. John B. Shaw, a party over the age of 16 a copy of the same together with a copy of the petition—at his usual place of residence." It is said in the late case of Troy Lumber Co. vs. State Sewing Mach., Corp., (N. C.) 64 S. E. 2d 415, 418 that "when the sheriff returns that he has 'served' the summons, this implies that he has discharged his official duty in that respect, that is, that he has served it according to law." Several cases are cited, and it stated that this shows service at least prima facie. In view of the fact that the summons was to serve Jo E. Fletcher and John B. Shaw the foregoing statement seems to imply that prima facie there was service according to law on both parties. However, we have seen that there was no valid service on Fletcher. So the prima facie case must be limited, and can apply only, if at all, to John B. Shaw. That Mrs. John B. Shaw was not intended to be served is clear from the petition and the summons, in which John B. Shaw is one of the defendants named therein. Counsel for appellant say without offering any proof of any kind that

Mrs. John B. Shaw may have been a cousin, a mother-in-law, or a daughter-in-law. That of course is possible, but would be the exception. Usually we would understand thereby that she was the wife of John B. Shaw. And if Mrs. Shaw actually was the wife of John B. Shaw, living with him, we may be almost certain that John B. Shaw received a copy of the petition and the summons, and in such case there would not seem to be the total absence of information which would justify a collateral attack. It is the fact of service and not the proof thereof that confers jurisdiction. 42 Am. Juris. 113, Note 1; 42 Am. Juris. 115, Note 11; Goodman vs. Order of United Workmen, 211 Minn. 181, 300 N. W. 624. Now in the case at bar, the judgment in the main action states that the court received evidence and that John B. Shaw was duly served. For aught we know the evidence submitted to the court may have fully clarified the situation, and it may have been shown that Mrs. John B. Shaw was in fact the wife of John B. Shaw, living with him, and that the papers were left at their usual place of residence. There would not, in such case be any contradiction of the return on the summons, but merely a clarification thereof. In 31 Am. Juris. 199, it is stated: "A collateral attack upon a judgment on the ground of the absence of jurisdiction may be precluded by statements in the record in regard to jurisdiction or in regard to the presence of particular jurisdictional facts. Under this rule, the jurisdictional facts will be deemed to have been properly ascertained on collateral attack even though the court may have misjudged the facts, so that a recital in the record as to the presence of jurisdictional facts may not be impeached or contradicted in a collateral proceeding by evidence outside the record." In Note at 68 A. L. R. 390 it is said: "There is a long line of authorities to the effect that a recital in a judgment of a court of general jurisdiction as to service of process is, upon a collateral at-

tack, conclusive, and not subject to impeachment." In 49 C. J. S. 844 it is stated: "Where a judgment or decree of a domestic court recites that proper notice of the action was given, that process was duly served, or that the parties were duly summoned or cited, such recital generally is conclusive on collateral attack, even though there may have been defects in some of the documents constituting part of the judgment roll and relating to the service of process." These statements seem to be confusing when read in connection with the citations from 31 Am. Juris. 201 and 203 already given, and see 31 Am. Juris. 202, Section 607, where it is said: "In most jurisdictions, the rule is that a recital in a judgment of due service of process may be impeached in a collateral proceeding by a positive contrary showing of the remainder of the record upon which the judgment is based." See also 68 A. L. R. 390-405. We shall not attempt to entirely harmonize these various statements. Some light on the subject is thrown by the case of Kaufmann vs. California Mining & Dredging Syndicate, 16 Cal. 2d 90, 104 P. 2d 1038 where the court stated: "In the present case it appears from the judgment in the other action that oral and documentary evidence was introduced and that the trial court there made its findings with respect to the validity of the service of process and the entry of the default. It does not affirmatively appear that these findings were based solely upon any particular document or documents, relating to service of summons and, under these circumstances, the presumptions in favor of the validity of the judgment make said findings conclusive upon collateral attack even though there may have been defects in some of the documents constituting part of the judgment roll and relating to the service of summons." The case quotes from Hahn vs. Kelly, 34 Cal. at page 431, 94 Am. Dec. 742 where it was said: " 'But if the judgment for proof of service refers generally to a paper or papers

on file, or to a summons and Sheriff's return thereon without specifying any particular paper, summons or return, and if there be found on file papers showing a defective and void service, and nothing further appears, the law to support the judgment would presume that the Court had other sufficient proof of service than that which remains on file; and it would not in that case appear affirmatively from the record that the recitals in the judgment were untrue. The recitals would therefore be conclusive proof of service. But if the judgment recites a due service of process without specifying how the service was made or referring to any paper as proof of it, the recital is conclusive on the parties in a collateral proceeding * * *.' " That case is in line with what is said in 31 Am. Juris. 202, Section 607 that: "The recital (in the judgment) is conclusive upon collateral attack, however, unless the contradiction is direct, explicit, and irreconcilable." In 50 C. J. 577 it is stated that "under a more liberal rule it is held that omissions in a return may be supplied or ambiguities explained by parol evidence, as where the return is so indefinite and uncertain as to render its meaning doubtful. Such evidence does not constitute a contradiction of, or attack upon, the return;" etc. And see Brusie vs. Gates, 80 Cal. 462, 22 P. 284, hereafter quoted, that the written return of an officer is not the only evidence of the fact that a writ was properly served. In 68 A. L. R. 392 it is stated in a note: "Where there is a defective service of process, as distinguished from lack of service, a recital or finding by the court in its judgment that there was due service of process is conclusive and cannot be attacked in collateral proceedings." Thus the courts—probably most of them—make a distinction between a case where there was a total lack of service and one where the return shows the service to be defective. We think that in the case at bar the return of the service upon John B. Shaw, can be

said only to show service that was defective. If that is correct, as we believe it to be, then the court had the right to take evidence supplementing the return and finding that, as a matter of fact, service was made upon John B. Shaw by serving his wife, Mrs. John B. Shaw, a member of the former's family, and at the usual residence of the defendant, Shaw. We are inclined to believe, accordingly, that in view of the collateral attack herein, we cannot say that the finding of the court that John B. Shaw was duly served is incorrect. It is true that, in the absence of a statute permitting it, separate and independent judgments cannot be rendered against defendants sued jointly. 1 Freeman on Judgments (5th Ed.) page 177; 2 Williston on Contracts, Section 329. The debt herein was joint. Section 61-307, Wyo. Comp. St. 1945. The rule mentioned has probably been materially modified by Section 3-3901, Wyo. Comp. St. 1945 hereafter quoted. In any event, the better rule seems to be that at best, the judgment against John B. Shaw would be erroneous only and not subject to collateral attack. Douglass's Lessee vs. Massie, 16 Ohio 271; Newburg and Goldsmith vs. Munshower, 29 Ohio St. 617; Capper vs. Short, 226 Ky. 689, 11 S. W. 2d 717; 1 Black on Judgments (2d Ed.) Sections 211 and 234. See 49 C. J. S. 78, Note 95.

3. EFFECT OF JUDGMENT AGAINST ONLY ONE PARTNER.

We have accordingly before us a judgment for a partnership debt against one of the partners of Fletcher and Shaw, valid against a collateral attack. The question then before us is what is the effect of such judgment insofar as it affects the joint property of the partnership? That question has not been argued by counsel on either side. It has presented a great deal of difficulty. We have attempted to make an exhaustive search of the authorities. We find a number of cases in which

joint property of joint debtors has been held subject to attachment or execution when only one of the joint debtors had been served with process. This was under the so-called joint debtor statute, which is in force in many states. See 49 C. J. S. 79 (3) ; Vols. 1 and 2 Freeman on Judgments (5th Ed.) Sections 107 and 569; Yerkes vs. McFadden, 141 N. Y. 136, 36 N. E. 7; Continental Supply Co. vs. Trust Co., 52 N. D. 209, 202 N. W. 404; Ellsberry vs. Black, 28 Colo. 477, 65 P. 629. We have no such statute, and have found but comparatively few cases bearing on the point before us, in the absence thereof. We find two absolutely contradictory and conflicting lines of authorities in this connection. We shall present them along both lines. It is held in the case of Donnell vs. Williams, 21 Hun. (N. Y.) 216 that: "Where, in an action brought against a firm, consisting of two members, an attachment is issued, and thereafter one of the partners is personally served with the summons, but the other is not, * * * the attachment ceases to be a lien upon the firm property." In Davidson vs. Knox, 67 Cal. 143, 7 P. 413 it was held that in an action against individuals as in the case at bar, under statutes in that state, somewhat similar to those in this state, no judgment would be allowed against the joint property of the individuals. In Brown vs. Gorsuch, 50 W. Va. 514, 40 S. E. 376 it was held: "Joint property having been levied on, it could not be subjected to the payment of plaintiff's demand without service on both the partners, either actual or constructive." See as supporting this holding to more or less extent, Stokes vs. Insurance Co., 141 S. C. 417, 139 S. E. 846, also the same case in 130 S. C. 521, 126 S. E. 649. In Rich vs. Solari, 17 Dist. of Columbia 371, the facts were exactly like those in the case at bar. Judgment was rendered against one partner, who alone was served in a suit commenced against both parties on a partnership contract. The court referring to some

Maryland cases in which the common law had been modified stated: "Without questioning the soundness of those decisions it is apparent to us that in this District, where the common law in this respect has not been modified by statute, the law is otherwise. The obligation of the firm being merged in the judgment against one partner, as to all members of the firm, and the judgment being against one only, it logically follows that the execution cannot be broader than the judgment and can only be levied on the property of the judgment debtor; hence cannot be levied on the partnership property. Ex parte Christy, 2 Deac. & C., 155; Bradley vs. Millar, 1 Rose 273." It will be noted that that case is based upon the theory of merger. That theory is stated in 2 Freeman on Judgments, supra, 567 as follows: "In the absence of statute to the contrary, whenever two or more persons are jointly liable, so that if an action is commenced against any less than the whole number the nonjoinder of the others will sustain a plea in abatement, a judgment against any of those so jointly bound merges the entire cause of action. The cause of action being joint, the plaintiff cannot be allowed to sever it against the objection of any of the defendants. By taking judgment against one, he merges the cause of action as to that one, and puts it out of his power to maintain any further suit, either against the others severally or against all combined." However, speaking of the rule of merger, the court in Frost vs. Thompson, 219 Mass. 360, 106 N. E. 1009 stated in part as follows: "The doctrine of merger, like res judicata, operates only between parties and their privies. It does not affect strangers to the original proceeding and is not available as a bar in their favor. * * * Apart from authority and on reason this conclusion is sound. It is only in proceedings in rem that the judgment of a court has been regarded as affecting those who are not parties or privies. Merger is a doctrine which has been extended

'very far' in this commonwealth, and which 'has not received the approval of the Supreme Court of the United States' and of other courts of respectable authority. * * * In the course of the judgment in Beckett vs. Ramsdale, 31 Ch. Div. 177, where after full discussion, it was held by the Court of Appeal that recovery of judgment against a surviving partner did not bar an action against the estate of a deceased partner, the doctrine was referred to by Lord Bowen as one of 'fierce severity.' It does not affect liabilities collateral or subsidiary to the original cause of action and yet separable from it." Furthermore, we are inclined to think that the doctrine of merger has been abolished in this state insofar as the situation is presented in this case by Section 3-3901, Wyo. Comp. St. 1945 which states: "When judgment is rendered in this state on a joint contract or instrument, parties to the action who were not summoned, * * * at the rendition of the judgment, may be made parties thereto by action in the same court, if they can be summoned in the state," etc.

We shall now present the other line of authorities. It appears that in Maryland the doctrine of merger was substantially abolished by statute somewhat similar to that of our statute heretofore cited. In the case of Johnston vs. Mathews, 32 Md. 363, the court said: "One of the partners having been summoned in the suit, which was instituted against all the partners, there was a party in Court, a judgment against whom would have been effective against the whole of the effects and assets of the firm." An annotation in 20 Ann. Cas. 1238 sets out the so-called Pennsylvania rule. In the case of Taylor and Fitzsimmons vs. Henderson, 17 Serg. & Rawle (Pa.) 453, it appears that one Mr. Page, a partner, had not been sued along with the others. The court said in part: "For the separate debt of a partner, I admit, only his separate estate can be sold; and as by

the contract of partnership, the debts are to be paid before capital or profits can be divided, it follows that he has no specific interest in the partnership effects, but only in what may remain after the settlement of the partnership account, and nothing beyond can be levied. But for a partnership debt, the entire property in the specific thing must be sold, even in a judgment against one of the partners; because through the medium of the execution, the law compels him to make the same application of the joint funds to the joint debts, that it was undoubtedly competent to him to make voluntarily. * * * Thus, I take it to be clear, that the interest of Mr. Page in the partnership effects, might be sold on a judgment against the others, just as if he had appeared to the action; and he was, therefore, a defendant both in substance and in form, although not technically a party to the issue." In the case of Harper vs. Fox, 7 Watts and Serg. (Pa.) 142 the court stated: "A partner has power to dispose of the joint effects by his separate act; and that he may not bind the firm by submission to arbitration, or confession of a judgment, is because it would bind the persons and separate estates of the members, and thus transcend the limits of partnership authority. But that a judgment against a single partner, as the representative of the firm, may be satisfied out of the joint effects, was said in Taylor vs. Henderson, (17 Serg. & Rawle 456). A judgment may be recovered against a less number than all the members, if there be not a plea in abatement; and the effects of the partnership may consequently be seized in execution of it." The rule so laid down in these cases has been consistently adhered to by the Pennsylvania courts. Thus it was said in Cover vs. Brown, Sutter & Co., 7 Pa. Dist. Rep. 19 as follows: "The foregoing citations will serve to show that a partner not served with process in an action against the firm will not be bound individually by a judgment obtained in such action; and where only

one of three partners is served, as in this case, an execution upon the judgment cannot be levied upon the individual property of those not served. * * * But the partnership effects may be sold on an execution issued upon a judgment obtained for a partnership debt against one of the partners: Ross vs. Howell, 84 Pa. 129; Freiler vs. Kear, 126 Pa. 470. The judgment thus obtained against one of the partners will authorize a levy and sale of the firm property as well as of his separate property: Boyd vs. Thompson & Coxe, 153 Pa. 78." In the case last cited the court said in part: "He (a partner) has a right to insist that the goods belonging to the partnership shall be used to pay the partnership debts, and if he deems it necessary to his own security or that of the creditor, he may confess a judgment against the firm for the amount of such debt which will justify the levy and sale of the goods of the firm and his own in payment thereof. In so doing he imposes no new or original liability on his firm, for the debt was already due from it. In that sense the judgment is not an executory contract to be performed in future, but a mode of payment for a debt contracted in the past, the consideration for which the firm has already enjoyed. Such a judgment has been sustained for purposes of execution against the goods of the firm in many cases, among which are Harper vs. Fox, 7 W. & S. 142; Grier vs. Hood, 25 Pa. 430; Ross vs. Howell, 84 Pa. 129; McCleery vs. Thompson, 130 Pa. 443." We need not pass upon the question of confession of the judgment but the principle underlying these cases is the same as the principle underlying the case at bar.

In the case of Powers vs. Braley, 41 Mo. App. 556 the question was as to the effect of the sale of partnership property under an execution against one of the partners for a judgment for a partnership debt. The court said: "This question is one of first impression in this

state, so far as we are now advised, but we think that
both reason and authority sustain us in the conclusion
that, where a judgment has been obtained against one
partner only on an unquestioned firm obligation, and
personal property belonging to the firm is levied upon
and sold to satisfy such judgment, the sale will pass to
the purchaser the entire title. This conclusion is not
unreasonable, but it is in harmony with the law govern-
ing partnerships. It is well settled that one partner can
sell, in the regular course of business, all the goods of
his firm; he may bind the other members as makers or
indorsers of negotiable securities, provided the trans-
actions are within the scope of the partnership busi-
ness; he can pledge or mortgage the personal assets of
the firm to secure the payment of a partnership debt;
he has authority to sell to a firm creditor the firm assets
to pay a partnership liability, and, therefore, when a
judgment is obtained against a single partner upon a
partnership obligation, and the personal assets of the
firm are taken on execution to satisfy the judgment,
such levy must be regarded as an application by the
partner, through legal process, of the joint fund to the
satisfaction of a joint debt. And it would make no dif-
ference whether the judgment against the partner was
involuntary or by confession; the result would be the
same. This position in no way militates against the
well-known doctrine that one partner cannot confess a
judgment against his copartners, because such judg-
ment would bind the separate estate of the members,
and this would be beyond the scope of partnership
authority. But this principle is not violated by permit-
ting a judgment against a single partner for a firm obli-
gation to be satisfied by the sale of partnership prop-
erty. In such cases the court would restrain the execu-
tion to partnership effects and to the separate estate of
the partner personally bound." In the case of New
Coronado Coal Co. vs. Jasper, 144 Ark. 58, 222 S. W.

22, one of the syllabi is as follows: "Where members of a partnership are sued, and service is only had upon one of them, a judgment in favor of plaintiff binds the served partner personally and as a partner, and partnership funds impounded by attachment and garnishment." The case of Martin & Bro. vs. Davis & Co., 21 Ia. 535 presents a contest between two attaching creditors. In one case a judgment was had against only part of the members of the partnership, while a judgment was obtained against all of them in another case. The court held: "The fact that a judgment on a firm debt was rendered against only a part of the members of the firm does not affect the equitable right to have the partnership property subjected to its payment." The court said in part: "The fact that the judgment was rendered against only two members of the firm, would not affect the *equitable* right to have the partnership property subjected to its payment. The rule in equity does not regard the form of the judgment, but the *substance* of the debt. Looking alone to the substance of the claims or debts of the respective parties, they are precisely equal in equity; both are partnership debts. Especially is this true under our statute, which holds the partner not sued or included in the judgment still liable."

An interesting case is that of Bethel vs. Judge of Superior Court, 57 Mich. 379, 24 N. W. 112 which involved the validity of garnishment in an action brought against a firm or partnership, but of which one of the defendants was an infant. No judgment, of course, could be recovered against the latter ,and the question was as to the effect of the judgment and the garnishment insofar as the adult partner was concerned. In other words, the question was whether or not, in view of the fact that judgment was not obtained against all the partners but only the adult partner, the garnishment of the property of the partnership was valid or

not. The court held that it was and that the garnishee was not discharged by reason of the fact that no judgment was obtained against all of the partners. The court considered in part a section of the statute which is very similar to Section 3-5018 of our statutes which provides that a garnishee should stand liable to the plaintiff to the extent of his right or interest therein from the time the garnishee is served with a written notice. The court in the Michigan case said in part: "Under this statute the rights and liabilities of the parties depend upon the facts which render the claim one garnishable or not at the time of the service of the writ. * * * If at that time the liability of the garnishee existed, it must continue until discharged in the manner provided by the statute." The statute provided that failure to recover judgment against the principal defendant should be deemed a discontinuance of all proceedings against the garnishee, as is also true under Section 3-5033, Wyo. Comp. St. 1945. As applied in the particular case the court came to this conclusion: "The proper construction to be given to this section of the statute is this: In all cases where judgment is rendered in favor of the plaintiff in the principal suit a garnishee is not discharged or entitled to judgment of discontinuance by a change of parties to the record, where the claim was one that was garnishable at the time of service of process." It must be remembered in this case that the action was commenced against both of the parties in this case, so that the indebtedness owing to it was clearly properly garnishable at the time when the action in this case was commenced, and as no judgment could be taken against the infant in the Michigan case, so no judgment could be taken against Fletcher, because he was not served by process. The change of parties is analogous. See also Thomas vs. Brown, 67 Md. 512, 10 Atl. 713.

We are thus confronted with two different lines of decisions on the point before us. There does not seem to be any intermediate course which we could adopt, so that it seems that we must adopt the reasoning of one or the other of these lines. Modern legislation is along the line of the Pennsylvania rule. 2 Williston on Contracts, Section 336, enumerates some 38 states in which modification of the common law rules have been adopted, and tending in the direction of adopting the Pennsylvania rule above mentioned. The joint-debtor statutes have mentioned are clearly in that direction. We think, accordingly, we should adopt the Pennsylvania rule and the cases supporting it and hold that a valid judgment was rendered against the defendant, John B. Shaw, herein, which binds the property of the joint debtors and could accordingly be reached by garnishment process.

4. OBJECTIONS TO ATTACHMENT PROCEEDINGS.

A number of objections are made by counsel for appellants to the attachment and garnishment proceedings in the main action. It is contended that by reason of defects therein no jurisdiction of the money in the hands of the garnishee was obtained. Counsel for plaintiff contends that these matters are not jurisdictional and were waived when the garnishee appeared and answered in the case. The general rule is stated in Rood on Garnishment, Section 270 as follows: "The garnishee may make many admissions and waivers without endangering his protection. He may waive payment of the fee allowed him by law, and his appearance and answer without objection will cure all defects in the process which do not go to the jurisdiction of the subject-matter." A number of mistakes which are quite obvious were made in this case, most of them by the officers of the court. However, it is the duty of counsel

for the plaintiff who seeks an attachment on property to see that all the various steps required by statute are taken, and not to do so is at his own peril or the peril of his client. It is quite clear in this case, judging by the nature of the mistakes, that counsel for plaintiff did not pay any attention to any of the papers that were made out or were served by the officers of the court. That, of course, is dangerous, particularly in special proceedings, and sometimes may be fatal. We must consider the objections herein made in detail.

a. Section 3-5010, Wyo. Comp. St. 1945 states as follows: "When the plaintiff, his agent or attorney, makes oath, in writing, that he has good reason to believe and does believe that any person or corporation in the affidavit named, is indebted to the defendant, or has property of the defendant in his possession, describing the same, if the officer cannot get possession of such property, or obtain the money due on account of such indebtedness, he shall leave with such garnishee a copy of the order of attachment, and a written notice that he appear in court and answer as provided in section twenty-eight hundred and ninety-five (§ 3-5027), and if the garnishee does not reside in the county in which the order of attachment was issued, the process may be served by the proper officer of the county in which the garnishee resides, or may be personally served." No affidavit such as mentioned in this section was filed. Counsel for appellant claims that this was fatal. They do not refer us to any case in point. The section above quoted must be construed in connection with Section 3-5004. It reads as follows: "The order of attachment shall be directed and delivered to the sheriff, and shall require him to attach the lands, tenements, goods, chattels, stocks or interests in stocks, rights, credits, money and effects of the defendant in his county, not exempt by law from being applied to the payment of plaintiff's

claim, or so much thereof as will satisfy the plaintiff's claim, to be stated in the order as in the affidavit, and the probable costs of the action." It may be noticed that under this section the sheriff is directed by the writ to attach credits and money. That would seem to indicate that it is not mandatory upon anyone to file an affidavit such as is mentioned in the first section above set out, and that it is intended merely to supplement the information of the sheriff. In 38 C. J. S. 366 it is stated that after the filing of a proper affidavit and the execution of a bond, the writ or summons in garnishment ordinarily issues as a matter of course; that under some statutes garnishment process may be issued by the attorney of a party, or notice to the garnishee may be given by a sheriff holding a writ of attachment or execution; that the issuance of a garnishment notice is ministerial rather than a judicial duty. It would seem, considering all these matters together, that the affidavit mentioned in Section 3-5010 is not jurisdictional, but may be waived by the garnishee when he appears and answers in response to the notice of garnishment served upon him.

b. The writ of attachment was issued at the time of the commencement of the action herein. Such writ of attachment is jurisdictional to obtain jurisdiction of the subject matter. 7 C. J. S. 376. The writ of attachment in this case was duly issued but it was made returnable on the same day on which it was issued. The question is whether that is fatal. The question of defects in respect to the return day of summons is discussed in 42 Am. Juris. 15 where it is said: "No general rule can be laid down as to the effect of defects or informalities, with regard to the appearance or return day, in a summons or notice of the commencement of an action in a court of record, because some defects are held to render the summons absolutely void and to invalidate all sub-

sequent proceedings in the action, while other defects are held to be simply irregular and subject to amendment, and because the same defect is held in some jurisdictions to be fatal and in others curable. It may be said, however, that in the majority of the cases considering the fact that the return day of process is mistaken or defectively stated, the rule seems to be that it does not render the process void, but only voidable." See also Note, 97 A. L. R. 748. If a summons is made returnable on the same day on which it is issued and the defendant does not move to quash the service, but appears generally in the action, he thereby waives any defect in the summons. We think that the same rule should be applied in the case at bar. The garnishee appeared and answered in the case, and made no motion to quash the service on it. We think it waived the defect in the writ of attachment.

c. The notice of garnishment served on the garnishee in this case was not signed by the sheriff. In 6 C. J. 188 it is said, speaking of the writ of attachment: "The writ should be signed by the officer by whom it is issued, whether this act is performed by a judge or the clerk of court, although a defect in this respect does not render the writ void, but may be waived or cured by amendment." In 7 C. J. S. 384 the statement is added: "although other authority regards an unsigned writ as void and not properly the subject of amendment." Only one case is cited on this addition. We intimated in the case of Deschenes vs. Beall et al., 61 Wyo. 39, 53, 154 P. 2d 524 that the majority rule is the correct rule. We have not found any direct authority on the question of signing the notice of garnishment. We think, however, that the rule above mentioned is applicable in connection with such notice. In fact, Section 3-5010 does not specifically provide that the notice of garnishment must be signed by anyone and that seems to be true under

422

other statutes. See 38 C. J. S. 372, Note 42. The lack of signature therefor on the part of the sheriff, cannot be regarded as jurisdictional and if required at all, must be held to have been waived when the garnishee appeared in this case and answered.

d. The writ of attachment issued in the main case recites that: "whereas L. C. Jones Trucking Company, an Oklahoma corporation * * * has complained," etc. The petition alleges that "the plaintiff is a Delaware Corporation engaged in interstate commerce, with headquarters at Oklahoma City, Oklahoma." The notice of garnishment makes no mention of the abode of the corporation. In a sense, at least ,the statement in the writ of attachment states the truth. It is quite clear that the error was merely a clerical error, and not jurisdictional. The record as a whole shows the facts correctly.

e. RETURN ON WRIT OF ATTACHMENT.

It is objected herein that the return of the writ of attachment is not sufficient to show that the court obtained jurisdiction of the subject matter, that is of the res—of the property in the hands of the garnishee. Counsel for appellant make so much of this point—and it seems to be of importance—that we have found it necessary, to make a somewhat exhaustive investigation of the authorities bearing thereon. Counsel cite among other cases the case of Bristol vs. Brent, 36 Utah 108, 103 P. 1076 which contains a valuable discussion on the subject of garnishment; but can hardly be considered a case directly in point herein, although it discusses the subject of obtaining a jurisdiction of the res in attachment proceedings generally. The record in this case is somewhat more complete than the record in the Utah case, at least if we consider the return on the garnishment notice. Moreover, the case became obsolete under a subsequent Utah statute similar to ours, as

hereinafter mentioned. Graham vs. Hidden Lake Copper Co., 53 Utah 230, 178 P. 64. The return on the writ of attachment is as follows: "I hereby certify that I received the within Writ of Attachment on the 29th day of March, 1949, at 2 o'clock P. M., and served the same in the County aforesaid, on the 29th day of March, 1949, by delivering a certified copy thereof personally to E. R. Burnett." The return on the garnishee notice is as follows: "I hereby certify that I served an original copy of the within Garnishee Notice, together with a copy of the Order of Attachment issued in said cause, upon the garnishee named in said notice, by delivering the same to E. R. Burnett, manager, personally on the 29th day of March, 1949, at 9:45 o'clock A. M., in Casper, Natrona County, Wyoming." It may be noted that the return on the writ of attachment itself shows that it was received at 2 P. M., of March 29, 1949, while the notice of garnishment states that it was served at 9:45 A. M. the same day. In other words, the notice of garnishment was, according to these returns, served before the writ of attachment was received. The latter writ was issued on the previous day, according to the date thereof. The return on the notice of garnishment states that it was served "together with a copy of the order of attachment issued in said cause," so that the writ must have been in the hands of the sheriff at that time. Under the circumstances we must regard the discrepancy in the time above mentioned as a clerical mistake.

In Rood on Garnishment, Section 277 it is stated: "all that has been said of the service of the writ applies with equal force to the return, for the return is the officer's report of his doings under the writ. It should be indorsed upon the writ, or made upon a paper annexed thereto; for the writ and return constitute, essentially, one record, and must go together. Whatever the statute requires to be done in the service of the writ, the return must show to have been done; and,

unless it shows that due service has been made, the court has before it no proper evidence upon which to base any further proceedings. Its absence cannot be cured by the garnishee's signed admission of due service." In Section 279 the same author states: "Palpable defects in the return are not cured by the presumption that the officer has done his duty. But it is held that objections to the sufficiency of the return must be made before or at the time of answering the writ. The return is conclusive of the proceedings under the writ."

Section 3-5017, Wyo. Comp. St. 1945 states as follows: "The officer shall return upon every order of attachment what he has done under it, and the return must show the property attached, and the time it was attached; when garnishees are served, their names, and the time each was served, must be stated; and the officer shall return with the order all undertakings given under it."

It would seem that under this statute the fact that notice of garnishment has been given, should be endorsed on the original writ of attachment. That was not done in this case and no valid levy appears to have been made in this case, unless we can consider the returns on the original writ of attachment and on the notice of garnishment together, or unless the return on the original writ is amendable and so may be regarded herein as amended, or unless the defect in the return must be considered as waived, or other valid reason to the contrary exists.

It must be confessed that at first glance in any event, the authorities on the point before us are confusing—in fact apparently irreconcilable. Many authorities state the rule as absolute that the failure of the return to comply with the statute makes the attachment void. 4 Am. Juris. 912, Section 591; 5 Am. Juris. 49. These

texts refer to Annotation in 93 A. L. R. 748-773. That annotation deals in the main with attachments of real or tangible personal property, not with garnishment. There is, of course, a material difference in attaching real and tangible personal property, and garnishment, since in the latter jurisdiction over the money attached can be obtained only by notice upon the garnishee, while seizure of the former must be in entirely different manner. Among the cases not involving garnishment is the case of Green vs. Coit, 81 Ohio St. 280; 90 N. E. 794 cited by counsel for appellant. That is true also with Dickinson vs. First National Bank, 64 N. D. 273, 252 N. W. 54; 93 A. L. R. 739. The Annotation cites cases which permit an amendment to the return, and cases which do not. Much depends upon statutory provisions. We shall mention some of ours later on. In any event, sufficient unto the day is the evil thereof, and we shall not attempt to lay down any rule which should govern in the case of attachments of real or tangible personal property, and confine this opinion to cases involving garnishment in which there has been a general appearance by the garnishee, and in which no objections have been raised by the defendants in the main action, and which do not involve adverse claims of other innocent creditors.

In 38 C. J. S. 381 it is said: "Where the statute so requires, the return should be indorsed on the original, and not on the garnishee summons. Where the notice to the garnishee is incidental to attachment, it must, where the statute so requires, be indorsed on the writ of attachment or *a paper annexed thereto*, it is not sufficient to indorse it on the back of the notice of garnishment, and the return indorsed on the notice of garnishment will not aid an insufficient return indorsed on the writ of attachment." (Italics supplied). The notice to the garnishee and the writ of attachment are

found together in the records before us, and while it is not stated in the return on the original writ of attachment that the notice to the garnishee is made a part thereof, it may, in a sense at least, be said that the return was at least partially made on *a paper annexed thereto*. In Hackett vs. Gihl, 63 Mo. App. 447, cited under the foregoing text, where the general rule above mentioned is stated, the court said that: "Neither the return nor the notice of garnishment contains any reference to an attachment suit, or attachment writ." That is not true in the case at bar in which the return on the garnishee notice expressly refers to the attachment writ. In Rock vs. Singmaster, 62 Ia. 511, 17 N. W. 744, also cited under the foregoing text, it is stated that the court doubtless could direct the officer to make a proper return on the original writ of attachment. In Bushnell & Clark vs. Joseph Allen & Bro., 48 Wis. 460, 4 N. W. 599, also cited under the foregoing text, it appears that the statute required that the fact of garnishment should appear on the original summons instead of on the notice of garnishment. The court said: "It is claimed that it was the duty of the garnishee to make objection to the proceedings because of these irregularities or defects in the proceedings. Had such objection been made doubtless it would have been unavailing, for the justice would have allowed the officer to make a correct return by indorsing on the original summons a certificate of due service of the garnishee summons," etc. It thus appears that while the foregoing text sustains the general rule that the statute should be followed, when it prescribes that the return should be made on the original writ of attachment, it by no means is decisive of what the holding of this court should be in the case at bar. It may well be that if another creditor should garnishee the same money garnisheed in a case, and no complete notice of the first garnishment is contained on the writ of attachment in the first case,

the other creditor's right should take precedence in right, and the garnishee should have the right, commensurate with the situation, to protect itself or himself. But we have no such case before us. No other creditor is claiming any rights herein, and even the defendants in the main suit have never interposed any objection to the attachment and garnishment in this case, and are raising no objections now.

In 7 C. J. S. 422 it is said: "The return to an attachment will not be invalidated by a mere irregularity or defect in form which in no way affects the substance thereof." In 7 C. J. S. 423 it is stated that the return may be aided by facts appearing elsewhere in the proceeding or by parol evidence. In Grebe vs. Jones, 15 Neb. 312, 18 N. W. 81 it appears that the return on the writ of attachment did not show what property was levied upon, but that was shown in the appraisement. Hence, the objection to the return was overruled. In Sinsheimer vs. Whitley, 111 Cal. 378, 43 P. 1109, the return, together with some parol testimony, showed what property was levied upon and the objection to the return was overruled. In Brusie vs. Gates, 80 Cal. 462, 22 P. 284 it is said: "The written return of an officer is not the only evidence of the fact that the writ was properly served; therefore, if the return simply omits to state any fact necessary to a valid service, such fact may be supplied by parol evidence, so long as the facts stated in the return are not varied or contradicted in such way as to affect vested rights. Ritter vs. Scannell, 11 Cal. 249; Porter vs. Pico, 55 Cal. 172; Davis vs. Baker, 72 Cal. 495, 14 Pac. Rep. 102." If a return may be amended, as is held in many cases, except as to intervening rights of innocent parties, the amendment usually relates back to the original return and dates from it. 42 Am. Juris. 115, Section 134; 4 Am. Juris. 919, Section 603; 7 C. J. S. 426, Section 250 (d). To

send this case back merely to have the return amended would subserve no good purpose, since what was actually done is definite and certain. The rule in 42 Am. Juris. 21 that process which is amendable supports a judgment should apply in this case.

In 38 C. J. S. 383 it is stated: "Objections as to the form and sufficiency of the return are ordinarily deemed to be waived by the garnishee where he has appeared and answered. * * * It has been both affirmed and denied that the entire absence of a return can be waived by the garnishee." As affirming the right that the garnishee may waive the entire absence of the return, the text cites Graham vs. Hidden Lake Copper Co., 53 Utah 230, 178 P. 64. As denying that right the text cites Federal Truck Co. vs. Mayer, 216 Mo. App. 443, 270 S. W. 407. In the latter case the ruling was based on the fact that the officer serving the notice of garnishment, made no return upon it at all. The contrary is true in the case at bar, so that the Missouri case cannot be considered as of any authority herein. In American Trust Co. vs. Kaufman, 276 Pa. 35, 119 Atl. 749, the court said in part: "The garnishees entered a general appearance. * * * By their appearance they were in court, as was the property attached through service on them. * * * The garnishees, having come into court and brought the res in with them by their appearance, could not set up that there was a faulty return." In Cope vs. Oil Well Supply Co., (Tex. Civ. App.) 57 S. W. 2d 917, the court stated: "In the second place the sufficiency of the return of a writ of garnishment becomes immaterial where the garnishee admits statutory service under oath, and particularly so where no rights of other creditors are involved." In Hillis vs. Wolfe (Tex. Civ. App.) 284 S. W. 227, the court stated: "The only office of an officer's return is to make a record of the service, and, where the garnishee under oath admits statutory serv-

ice, the sufficiency of the officer's return becomes immaterial." To the same effect are Joseph vs. Pyle, 2 W. Va. 449; Saunders vs. Moore, 21 Tenn. App. 375, 110 S. W. 2d 1047; Flournoy & Epping vs. Rutledge, 73 Ga. 735; Lee vs. Jackson Light & Traction Co., 261 Fed. 721. In the case of Graham vs. Hidden Lake Copper Co., 53 Utah 230, 178 P. 64 the court said in part: "It is contended by respondent that under the provisions of Comp. Laws 1907, § 3094, a return was necessary, showing due service on the person named as garnishee before the court had jurisdiction of the garnishee or of any property in its hands belonging to the defendant. A reading of that section does not support that contention. That section simply states that the return showing such service shall give the court jurisdiction to proceed against the garnishee as therein provided, but it does not provide that the property sought to be reached was not liable to the claims of the plaintiff until the return of the writ. Such property became liable from the date of service as provided in the second paragraph of chapter 94, Laws Utah 1913. True, the court could not proceed to determine the rights of the parties unless or until there was some evidence before it that process had been served upon the garnishee, but the garnishee was, nevertheless, bound to hold, for the benefit of the plaintiff, whatever property it had belonging to the defendant on the date of serving the writ. In the chapter providing for garnishment there is no time fixed when the officer shall make a return." What the court said as to the necessity of proof being before the court before it could proceed to adjudge the rights of the parties is, we think, satisfied by our statute hereinafter mentioned.

The rule deducible from these authorities, (we cannot say that all cases would support it) seems to be that jurisdiction of the subject matter—the money garnisheed—in analogy to the rule governing jurisdiction of the person, as heretofore stated, is the actual service

of notice of garnishment upon the garnishee, thereby laying hands upon and seizing the money, and that the return upon the writ is but evidence thereof. The seizure in this case was, as far as we can see, in strict conformity to the statute.

If there were any doubt on the subject, so far as this state is concerned, it is, we think, dissipated by the provisions of Section 3-5013, Wyo. Comp. St. 1945 which counsel have overlooked. It provides: "and if the garnishee admit an indebtedness to the defendant and the court order the payment of the same or any part thereof to the plaintiff, and the garnishee fail to pay the same according to such order, execution may issue thereon as upon judgments for the payment of money." That statute means, if it means anything at all, that when a garnishee comes in and answers that he owes money to the defendant, the court by that very fact obtains jurisdiction over the garnishee and the money garnisheed. The return of the officer in such case becomes immaterial, since evidence of what was done is shown by the appearance and answer of the garnishee. Section 3-5031 provides that: "if he (the garnishee) fail to comply with the order of the court to deliver the property and pay the money owing into court, * * * the plaintiff may proceed against him by civil action." We do not know how to reconcile the two sections quoted unless we hold that the term *may* in the latter section means just what it says; namely, that the plaintiff in a garnishment proceeding has the option, when the garnishee's answer discloses an indebtedness due to the defendant, to have execution issued at once, or proceed by civil action. It is probable that the latter section was particularly intended to apply to a case when a garnishee fails to appear, or when his answer is unsatisfactory.

Another section of our statute has a material bearing

herein. Section 3-5018, Wyo. Comp. St. 1945 provides in part: "An order of attachment shall bind the property attached from the time of service; and the garnishee shall stand liable to the plaintiff in attachment to the amount of * * * moneys, credits, and effects in his possession * * * belonging to the defendant * * * from the time he is served with the written notice * * *," etc. That, of course, seems wholly inconsistent with the theory that the lien attaches, and jurisdiction over the res is obtained, only after the return of the writ of attachment has been made in compliance with Section 3-5017, Wyo. Comp. St. 1945 heretofore quoted. Graham vs. Hidden Lake Copper Co., heretofore cited is exactly in point, the court also stating in part: "Under the provisions of the amendment in chapter 94, Laws Utah 1913, the garnishee became liable to the plaintiff from the time of the service of such writ to the amount of any property or indebtedness belonging to or due to the defendant, or in its custody or control, and is required to make answer to the writ showing such property or debt. It will thus be seen that service of the writ upon the garnishee made the garnishee liable for such property, and not the return which the officer is required to make to the court of the action taken by him in the service of the writ."

In view of what has been said, we think we should hold that whatever defect there is in the return of the sheriff here considered is not, under the facts as disclosed in this record, jurisdictional, but may be waived when the garnishee answers generally as it did in this case. That seems to be in complete harmony with Rood on Garnishment, Section 279 heretofore quoted where the author states that "it is held that objections to the sufficiency of the return must be made before or at the time of answering the writ."

We regret the length of this opinion. It is due to so

many errors appearing in the record, some of which on first impression appeared to be fatal. But after thoughtful analysis and careful consideration of the numerous cases more or less directly bearing on the points involved herein, we have been constrained to conclude that we should agree with the trial court that these errors were not prejudicial, mainly in view of the fact —to summarize—that the attack on the judgment in the main suit is a collateral attack, and that the defects in the attachment and garnishment proceeding were not jurisdictional, but were waived by the appearance and answer of the garnishee. Thus we are led to an affirmance of the judgment of the trial court herein. An order to that effect will be entered.

*Affirmed.*

KIMBALL, C. J. and RINER, J., concur.